UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

UNITED STATES OF AMERICA,

- versus -

ANTHONY COTRONEO,

        Defendant.

ORDER
11-cr-707

JOHN GLEESON, United States District Judge:

    Defendant Anthony Cotroneo is charged in a five-count indictment with possession and distribution of child pornography, in violation of 18 U.S.C. § 2252.  *See* ECF No. 7 (Indictment).  On October 8, 2013, Cotroneo moved to suppress all evidence seized during a search of his residence pursuant to a search warrant issued by United States Magistrate Judge Lois Bloom on September 19, 2011.  For the reasons stated below, Cotroneo's motion is denied.

## BACKGROUND

    On September 19, 2011, the government applied to Judge Bloom for a warrant to search the second-floor apartment of a residence located at 341 Darlington Avenue in Staten Island.  In support of the application, the government provided the affidavit of Federal Bureau of Investigation ("FBI") Special Agent Mitchell Thompson.  ECF No. 38, Ex. A ("Thompson Affidavit").  The Thompson Affidavit states that on or about March 23, 2011, an FBI special agent working undercover signed into a publicly available peer-to-peer ("P2P") file-sharing program.[1]  *Id.* ¶ 23.  The agent conducted a search of the content being offered by other users

---

[1] A peer-to-peer file-sharing program utilizes software that lets users exchange digital files through a network of linked computers over the Internet.  Users access peer-to-peer networks by downloading the peer-to-peer software from the Internet.

with a term known to be associated with child pornography, and among the responses he received was one from Internet Protocol ("IP") address 173.56.52.46.[2] *Id.* ¶ 24. The undercover agent connected with that IP address and accessed a list of files that user was sharing. *Id.* The list of shared files included several that were named in a manner consistent with child pornography. *Id.* ¶ 25. The agent successfully downloaded six image files and partially downloaded two video files from this user, all of which appeared to be child pornography. *Id.* The agent memorialized the process of searching for and downloading these files with a screen capture program. *Id.* ¶ 23.

      An open-source database search indicated that the IP address in question was registered to Verizon. *Id.* ¶ 26. Records obtained from Verizon by an administrative subpoena showed that this IP address was subscribed to by Anthony Cotroneo at 341 Darlington Avenue, Staten Island. *Id.* ¶ 27. The Thompson Affidavit noted that a criminal history search for Cotroneo indicated that he "is registered in New York State as a Level 1 registered sex offender." *Id.* ¶ 27 n.4. The Thompson Affidavit also states that the United States Postal Service confirmed that Cotroneo receives mail addressed to the 2nd floor of the 341 Darlington Avenue address. *Id.* ¶ 5. In addition, Special Agent Thompson stated that he conducted surveillance on that address and observed a white male, approximately 60 years of age, park a white Toyota Camry with New York State license plate number "ENS-1302" in front of the residence and enter the 2nd floor apartment. *Id.* ¶ 7. New York State Department of Motor Vehicles ("DMV") records indicate that a white Toyota Camry with the same license plate number is registered to Cotroneo, and Thompson recognized a DMV photo of Cotroneo as the man he saw enter the 2nd floor apartment. *Id.* ¶ 7.

---

[2]     Each Internet connection has a unique IP address.

On September 19, 2011, Magistrate Judge Bloom issued a search warrant for the Darlington Avenue address and the next day FBI agents executed the warrant. The agents recovered a DVD from a closet in Cotroneo's apartment that contained seven videos of child pornography, including one of the videos that had been partially downloaded by the undercover agent from the IP addressed assigned by Verizon to Cotroneo. The agents also seized a laptop computer that had the P2P file-sharing program on it that the undercover agent had used to download the child pornography from Cotroneo's IP address. However, the laptop did not have any child pornography on it. Cotroneo was arrested and taken to the FBI's field office for processing.

DISCUSSION

A. *Governing Law*

A valid search warrant must be based on probable cause. U.S. CONST. amend. IV. "To establish probable cause to search a residence, two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The "duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.*

B. *Analysis*

Cotroneo first argues that the "the vast majority of facts and recitations contained in the [Thompson Affidavit] are general boilerplate language," implying that the search warrant

3

was not based on factual allegations sufficiently specific to Cotroneo and his residence. ECF No. 37 (Memorandum in Support), at 2. I disagree. As detailed above, the Thompson Affidavit contained an in-depth description of the activities carried out by Thompson and other FBI agents that led Thompson to believe that child pornography would be found in Cotroneo's residence. That the Thompson Affidavit also contained extensive "boilerplate" explanations of the technical terminology necessary to understand the investigation as well as background information regarding child pornography investigations in general does not detract from the allegations in the affidavit pertaining specifically to Cotroneo.

Next, Cotroneo argues that the probable cause to search his residence was stale because the investigation that led agents to suspect child pornography would be found in his residence, as described in the Thompson Affidavit, took place approximately six months before the search warrant was issued. To determine whether the factual allegations supporting a search warrant are stale, a court will consider "the age of those facts and the nature of the conduct alleged to have violated the law." *United States v. Ortiz*, 143 F.3d 728, 732 (2d Cir. 1998) (quoting *United States v. Martino,* 664 F.2d 860, 867 (2d Cir.1981)).

The Second Circuit stated in *United States v. Irving* that "[w]hen a defendant is suspected of possessing child pornography, the staleness determination is unique because it is well known that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes." 452 F.3d 110, 125 (2d Cir. 2006) (internal quotation omitted). Accordingly, it is common for courts to find that probable cause to search a residence for child pornography has not gone stale even when the underlying factual allegations are many months or even years old. *See*, *e.g.*, *id.* (holding 22 month-old factual allegations not stale in child pornography context); *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010)

4

(allegations that defendant had downloaded child pornography 18 months before the search warrant issued were not too stale to establish probable cause); *United States v. Frechette,* 583 F.3d 374 (6th Cir. 2009) (allegation that defendant had purchased a one-month membership to a child pornography website 16 months prior to the search was not stale). Because the factual allegations at issue here were only six months old, they were not too stale to establish probable cause to search Cotroneo's residence for child pornography.

Finally, Cotroneo alleges that the Thompson Affidavit contained materially false statements. Specifically, Cotroneo contends that the files downloaded from the IP address subscribed to Cotroneo were not found on his laptop computer; that the affidavit falsely alleged Cotroneo was a member of a "hardcore pedophile/child pornography network;" and that affidavit incorrectly stated that Cotroneo was required to register as a sex offender.

A defendant seeking to suppress evidence gathered pursuant to a search warrant on the grounds that the supporting affidavit contained inaccuracies must show "(1) that the inaccuracies were the product of a Government agent's 'deliberate falsehood' or 'reckless disregard for the truth' rather than innocent mistake, and (2) that, after setting aside the falsehoods, what remains of the warrant affidavit is insufficient to support a finding of probable cause." *United States v. Coreas*, 419 F.3d 151, 155 (2d Cir. 2005) (quoting *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)). Courts accord an affidavit supporting a search warrant "a presumption of validity." *Franks*, 438 U.S. at 172. In order to be entitled to an evidentiary hearing, a defendant must "point out specifically the portion of the warrant affidavit that is claimed to be false," and the allegations of falsity must be "more than conclusory" and "accompanied by an offer of proof." *Id.*

Cotroneo argues that because the files downloaded by the undercover agent were not found on the laptop seized from Cotroneo's residence, the Thompson Affidavit must contain false statements. I disagree; there are several other possible explanations for why the files were not found on the laptop. The two most likely are that Cotroneo could have used a different computer to store and share these files, and that Cotroneo could have deleted the files from the laptop before the search was carried out. The fact that one of the video files downloaded by the undercover agent was found on a DVD in Cotroneo's closet further supports the veracity of the Thompson Affidavit in this regard.

Cotroneo next alleges that the Thompson Affidavit falsely asserts that Cotroneo was a member of a "hardcore pedophile/child pornography network which is not accessible by casual web-browsing." ECF No. 38, Ex. A ("Thompson Affidavit") ¶ 25 n.3. This statement was provided in the context of discussing "morphing," which is a technology that can be used to create still images that appear to be child pornography but that are not actually photos of minors.[3] *Id.* This argument fails because even assuming, *arguendo*, that this statement was inaccurate and the product of a government agent's deliberate falsehood or reckless disregard for the truth, the Thompson Affidavit considered without this statement still provides probable cause to issue a search warrant for Cotroneo's residence.

Finally, Cotroneo contends that the Thompson Affidavit falsely states that Cotroneo was required by law to register as a sex offender. This portion of the affidavit states, in its entirety,

> A criminal history search indicates that Anthony Cotroneo is registered in New York State as a Level 1 registered sex offender. On his most recent annual verification, dated December 28, 2010, Anthony Cotroneo registered his address as 341 Darlington Avenue,

---

[3] Cotroneo does not argue that the child pornography he is charged with possessing and distributing utilized this "morphing" technology.

6

> Staten Island, NY 10312. He also listed FIOS (a service provided by Verizon) as his [Internet Service Provider].

*Id.* ¶ 27 n.4. The affidavit does not claim that Cotroneo was *required* to register as a sex offender, only that he was so registered, thus I fail to see any inaccurate statement. Even if the affidavit was inaccurate in this regard, such a false statement would not have been material to the determination of probable cause.

## CONCLUSION

For the reasons explained above, Cotroneo's motion to suppress the evidence seized pursuant to the September 19, 2011, search warrant of his residence is denied.

So ordered.


John Gleeson, U.S.D.J.

Dated: January 8, 2014
      Brooklyn, New York